UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.,* | § | |
| | § | |
| | § | |
| Debtors, | § | |
| | § | |
| | § | |
| DAVID GONZALES, TRUSTEE OF THE FRESH ACQUISITIONS LIQUIDATING TRUST, | § | Civil Action No. 3:25-cv-2093-X |
| | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| ALLEN JACKIE JONES, *et al.,* | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is David Gonzales (Gonzales) and Litchfield Ventures, LLC's (Litchfield) appeal of the bankruptcy court's order. (Doc. 1.) For the reasons outlined below, the Court **AFFIRMS** the bankruptcy court's order.

**I. Background**

In April 2021, Fresh Acquisitions, LLC (Fresh) and its affiliates filed for bankruptcy under Chapter 11. In December 2021, the bankruptcy court confirmed a liquidating plan (the "Plan") and Liquidating Trust Agreement. The Plan created a Liquidating Trust (the "Trust") to pursue causes of action and distribute recoveries to creditors. Gonzales was chosen to act as Liquidating Trustee to oversee the Plan.

1

As trustee, Gonzales initiated multiple adversary proceedings asserting claims against alleged "insiders," namely Allen Jackie Jones, Jason Richard Kemp, Lawrence Farrell Harris, Rachel Harris, Alamo Furr's LLC, Larrac Inv., LLC, All Jones, LLC, Martin Cortes, LLC, TXFMP Management LLC, VitaNova Brands LLC, Alamo Dynamic LLC, AB Real Estate LLC, and Dayspring Operating Company LLC (collectively "Appellees").

In May 2023, Gonzales entered into a Litigation Funding Agreement (the "Agreement") with Litchfield without notification to the bankruptcy court or creditors. Gonzales entered into the Agreement to obtain funding to continue adversary proceedings against Appellees, the alleged "insiders." Under the Agreement, Litchfield as the "Forward Purchaser" would receive notice of and have opportunity to review any settlement agreement two business days before it could be finalized (and before the bankruptcy judge receives notification).[1] Litchfield would provide $2,325,000 in funding and would receive three times whatever the litigation funder funds ($6,975,000) plus 12% of any litigation proceeds exceeding $6,975,000.[2]

The Plan provided that the Trust's expenses would be paid solely from "Liquidating Trust Assets" and did not include post-confirmation litigation funding as an option to fund the Trust. Two years later, the bankruptcy court inquired into the status of the case, at which Gonzales made an offhand reference to the Agreement. The bankruptcy court then ordered production of the Agreement and an

---

[1] *In re Fresh Acquisitions,* No. 21-30721-SGJ-11, 2025 WL 2231870, at *5 (Bankr. N.D. Tex. Aug. 5, 2025).

[2] *Id.*

2

evidentiary hearing.

After the hearing, the bankruptcy court concluded that Gonzales lacked authority to enter into the Agreement.  Further, it found that "it is impossible for [the bankruptcy court] to find or conclude that Litigation Funding Agreement here . . . was entered into in the exercise of reasonable business judgment or reflected the actions of a prudent fiduciary."[3]  To illustrate the Agreement's poor business judgment, the court presented multiple hypothetical situations.[4]  For example, if Gonzales won (through a settlement) $10 million, Litchfield would receive $7,338,000, leaving only $2,662,000 for creditors.[5]  Moreover, Gonzales's legal team is owed $2,126,278.09 in unpaid fees.[6]  So all the creditors would really get under the Agreement in this scenario is $500,000 of the $10 million settlement.[7]

The bankruptcy court further found that Gonzales had yet to object to IRS proofs of claim totaling at least $150 million.[8]  The bankruptcy court concluded that these facts—combined with the hypothetical recovery scenarios and the millions already owed to Gonzales's professionals by the Liquidating Trust with no settlement in sight—showed that Gonzales had not exercised reasonable business judgment and warranted his removal as trustee.[9]

---

[3] *Id.* at *10.

[4] *Id.* at *6.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at *7.

[9] *Id.* at *10–11.

As a result of these findings, the bankruptcy court entered a Memorandum Opinion and Order that: (1) declared the Trust no longer had a contractual obligation to Litchfield, (2) removed Gonzales as Liquidating Trustee and directed the appointment of a new trustee, and (3) ordered expanded mediation to resolve the underlying disputes.[10]

Gonzales and Litchfield subsequently appealed to this Court.

## II. Legal Standard

A district court's review of a bankruptcy court's order mirrors that of a court of appeal's review of a district court proceeding.[11]  If the district court determines the bankruptcy court lacked authority under Article III of the Constitution to enter the order being appealed, the district court may treat it as a proposed finding of fact and conclusion of law.[12]  The district court reviews bankruptcy court findings of fact for "clear error," and conclusions of law *de novo*.[13]  Clear error exists when, a review of the record leaves "a definite and firm conviction that a mistake has been committed."[14]  When there is a mixed question of law and fact, the standard depends "on whether answering it entails primarily legal or factual work."[15]

---

[10] *Id.*

[11] 28 U.S.C. § 158(c)(2).

[12] FED. R. BANKR. P. 8018.1.

[13] *See In re Tex. Com. Energy*, 607 F.3d 153, 158 (5th Cir. 2010).

[14] *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002) (cleaned up).

[15] *U.S. Bank Nat'l Ass'n ex. rel. CWCapital Asset Mgt. LLC v. Vill. of Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

### III. Analysis

Gonzales and Litchfield raise three main issues on appeal: (1) that the bankruptcy court did not have post-confirmation jurisdiction to terminate the Agreement, (2) that Gonzales had authority to enter into the Agreement and therefore it was an overstep of the bankruptcy court to find otherwise, and (3) that the bankruptcy court did not have jurisdiction to remove Gonzales as trustee.[16] The Court disagrees and affirms the bankruptcy court's order.

### A. The Bankruptcy Court Had Jurisdiction

Gonzales and Litchfield first argue that the bankruptcy court did not have authority to terminate the Agreement. According to Gonzales and Litchfield, the bankruptcy court lacked post-confirmation jurisdiction and no case or controversy existed because none of the parties objected to the Agreement.[17] Appellees contend that the bankruptcy court did have jurisdiction over the Agreement because bankruptcy courts have jurisdiction over matters pertaining to implementation of the Plan.[18]

The Fifth Circuit has stated that, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus the bankruptcy jurisdiction, ceases to exist, *other than for matters pertaining to the implementation or execution of the plan.*"[19] Here, the issue is whether the Plan gave the trustee authority to enter into

---

[16] Doc. 5.

[17] Doc. 24 at 28.

[18] Doc. 30 at 11.

[19] *In re Craig's Store of Tex., Inc.,* 266 F.3d 388, 390 (5th Cir. 2001) (emphasis added).

the Agreement. Because this issue is a matter pertaining to the implementation and execution of the Plan, the bankruptcy court had jurisdiction.

Further, the Plan includes a "Retention of Jurisdiction" provision that gives exclusive jurisdiction to the bankruptcy court to remedy any inconsistencies with the Plan.[20] So if the Agreement was found to be inconsistent with the Plan, the bankruptcy court has the authority to remedy the situation.[21]

## B. Gonzales Lacked Authority to Enter into the Agreement

Having confirmed the bankruptcy court's jurisdiction, the Court turns to whether Gonzales had the authority to enter into the Agreement with Litchfield.

Neither party contends that the Plan *expressly* states that Gonzales was authorized to enter into litigation funding agreements under the Plan. Gonzales and Litchfield argue that the Plan gave Gonzales the "rights, powers, and duties necessary" to investigate, pursue litigation against insiders.[22] Further, Gonzales and Litchfield state that the Plan gave Gonzales the authority to enter into contracts "necessary" to administer the Trust without approval from the bankruptcy court.[23] Gonzales and Litchfield therefore argue that the Agreement was a necessary contract

---

[20] Doc. 30 at 11.

[21] As to Gonzales and Litchfield's case or controversy argument, while it is true that the case-or-controversy requirement limits Article III courts, bankruptcy courts are creatures of Article I. Accordingly, their jurisdiction comes from Congress and the Bankruptcy Code, not the Constitution's judicial power clause. *In re Highland Capital Mgmt., L.P.*, 74 F.4th 361, 366 (5th Cir. 2023) ("Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing." (cleaned up)).

[22] Doc. 24 at 44–45.

[23] *Id.* at 45.

to the proper administration of the Trust, and therefore was legitimately within Gonzales's authority.

The bankruptcy court held that the Agreement is inconsistent with the Plan's anticipated funding of the Trust.[24] The bankruptcy court found that "the [Plan] is not worded in a way that contemplated giving the Liquidating Trustee th[e] authority" to enter into a litigation funding agreement.[25] Nor, according to the bankruptcy court, did it give the trustee the authority to enter into an agreement that would place a funder's interests above creditors, without first disclosing the agreement to the creditors.[26] The Court agrees.

While matters of law are reviewed *de novo*, when "reviewing a bankruptcy court's interpretation of a confirmed plan the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order."[27]

Here, the bankruptcy court was interpreting the Plan it confirmed. And it concluded that the Plan did not give Gonzales the authority to enter into a litigation funding agreement. So the Court defers to its reasonable interpretation.

Even if the Court did not defer to the bankruptcy court's interpretation, the Agreement was an unnecessary contract to the administration for the Trust. When a contract does not define a term on its own, the court can use the ordinary meaning

---

[24] *In re Fresh Acquisitions*, 2025 WL 2231870, at *11.

[25] *Id.* at *9.

[26] *Id.*

[27] *In re O'Connor,* 258 F.3d 392, 401 (5th Cir. 2001) (cleaned up).

of the word.[28]  Courts can look to a dictionary to discern that meaning.[29]  Here, the term "necessary" was not defined within the Plan, therefore the dictionary definition of the word will be used.  Dictionary evidence gives "necessary" the definition of "absolutely needed."[30]  Because the Agreement's benefits primarily run to Litchfield and not the creditors, the Court cannot conclude that the Agreement was absolutely needed to administer the Trust to the benefit of the creditors.

Accordingly, Gonzales lacked authority to enter into the Agreement.

### C. Of Course the Bankruptcy Court Could Remove Gonzales as Trustee

Gonzales next argues that the bankruptcy court acted outside of its authority when removing him as trustee, because the bankruptcy court's jurisdiction ends after confirmation.[31]  Appellees counter that the bankruptcy court was well within its jurisdiction based on sections 105(a), 1142, and 3020(d) of the Bankruptcy Code.[32]  The Court agrees with Appellees.

Section 105(a) permits courts to "*sua sponte*, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."[33]  Confirmed plans are the result of court orders

---

[28] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009).

[29] *Id.* at 578.

[30] *Necessary*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/necessary (last visited July 13, 2026).

[31] Doc. 5 at 13.

[32] Doc. 30 at 18.

[33] 11 U.S.C. § 105(a).

and have the effect of a judgment rendered by the district court.[34]  So the bankruptcy court could *sua sponte* issue an order necessary to enforce the Plan.[35]

And because Gonzales's Agreement with Litchfield was entered into without authority under the Plan, Gonzales abused his discretion as trustee and the process.[36] Accordingly, the bankruptcy court's order removing Gonzales as trustee was proper under section 105(a) to enforce a court order and prevent an abuse of process.

The bankruptcy court did not act without jurisdiction when it removed Gonzales nor was it an abuse of discretion to do so.

### IV. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order.

**IT IS SO ORDERED** this 20th day of July 2026.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[34] *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010); *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 397 (N.D. Tex. 1992) (Sanders, C.J.).

[35] *See Wells Fargo Home Mortg. v. Rodriguez*, 2012 WL 393319, at *4 (W.D. La. Feb. 6, 2012) ("Pursuant to 11 U.S.C. § 105, a bankruptcy court has the power to carry out any action which it deems necessary and proper, including the implementation of orders related to the bankruptcy court's duty to enforce a confirmed plan.").

[36] *In re IFS Fin. Corp.*, 803 F.3d 195, 207–08 (5th Cir. 2015).